IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON 455 Massachusetts Ave., N.W., Sixth Floor Washington, D.C. 20001, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 1:17-cv-00432-JEB |
| U.S. DEPARTMENT OF JUSTICE, 950 Pennsylvania Ave., N.W. Washington, D.C. 20530, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

This lawsuit is premised on the extraordinary argument that the Freedom of Information Act ("FOIA") requires the Department of Justice's Office of Legal Counsel ("OLC") to affirmatively publish **all** of its formal written opinions, even though courts—including the D.C. Circuit—have squarely and repeatedly concluded that those documents are privileged and therefore need not be disclosed under FOIA, even when specifically requested. According to plaintiff Citizens for Responsibility and Ethics in Washington ("CREW"), ongoing publication of OLC's formal written opinions is required by FOIA's affirmative disclosure provision, 5 U.S.C. § 552(a)(2). CREW's lawsuit is not a typical FOIA lawsuit, however, as CREW does not seek to challenge the withholding of any specific OLC opinion. Indeed, CREW's Complaint does not mention any particular document that CREW believes OLC has unlawfully failed to publish under § 552(a)(2). Nor does the Complaint supply any other factual basis for its contention that OLC is not currently complying with its FOIA obligations. Instead, CREW advances the legal claim that all of OLC's formal written opinions must be disclosed. ECF No. 1 ("Compl.") ¶ 27. For several reasons, this lawsuit must be dismissed.

As an initial matter, Defendant understands Plaintiff's claim to be based on its legal contention that all OLC formal written opinions must be disclosed. *See* Compl. ¶ 27; Prayer for Relief ¶¶ (1)-(3). But to the extent the Complaint advances a different claim—which would be necessary because, as discussed below, the natural reading of CREW's claim would plainly be meritless—it is neither ripe nor adequately pled. CREW does not challenge the withholding of any particular OLC advice document. And aside from its apparent argument that **all** OLC formal written opinions must be published, CREW does not plead any facts in support of its claim that OLC has failed to comply with its obligations under § 552(a)(2). In short, if CREW intended to bring a different claim—such as, for example, a claim that **some** unspecified subset of OLC's

written opinions must be published or a claim that OLC is violating § 552(a)(2) in some other, unspecified way—the Complaint simply does not present a sufficient factual foundation for such a claim.

The substantive claim the Complaint actually appears to present—a legal contention that all of OLC's formal written opinions must be published—is meritless and foreclosed by binding authority, which holds that unless the applicable privileges are subsequently waived, OLC advice documents are ordinarily privileged and properly withheld under FOIA. Indeed, the D.C. Circuit has concluded that a final, formal OLC opinion was properly withheld as privileged. *See Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir.), *cert. denied*, No. 13-1474, 135 S. Ct. 356 (2014) ["*EFF*"]; *see also New York Times v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015). By contrast, despite numerous cases challenging the withholding of OLC's legal advice under FOIA, no court has ever concluded that the disclosure of OLC's legal advice was compelled under § 552(a)(2). This claim—even if ripe for review—accordingly fails as a matter of law.

In Count Two of the Complaint, CREW also alleges that OLC has failed to comply with FOIA's indexing requirement, because OLC has not made available indices of its formal written opinions—opinions that, in CREW's view, are subject to § 552(a)(2). But even assuming this claim is cognizable under FOIA, Count Two depends on OLC's opinions actually falling within § 552(a)(2). For all the same reasons discussed above, then, this claim too should be dismissed.

## BACKGROUND

## I.    RELEVANT STATUTORY FRAMEWORK

FOIA requires federal agencies to affirmatively publish certain records. *See* 5 U.S.C. § 552(a)(1), (2). As relevant here, the affirmative disclosure provisions of FOIA require that:

> Each agency . . . shall make available for public inspection . . . (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the

adjudication of cases; [and] (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[.]

*Id.* § 552(a)(2).

For records that have not been affirmatively disclosed, FOIA permits individuals to submit requests to agencies for the disclosure of specific records:

Except with respect to the records made available under paragraphs (1) and (2) of this subsection . . . each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3)(A).

To the extent an agency withholds records or fails to affirmatively disclose records subject to the publishing provision, FOIA authorizes judicial review in federal district court. A litigant may file suit, and FOIA authorizes a particular form of relief: the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

Not all records need to be disclosed under FOIA. The Act contains nine specific exemptions, which allow the agency to withhold the information falling within such exemptions. *See id.* § 552(b). In light of the language of § 552(b)—"[t]his section does not apply to matters that [fall within an exemption]"—agencies may withhold such exempt information regardless of whether the record falls within the affirmative-disclosure provisions of § 552(a)(2), or was requested by an individual under § 552(a)(3). *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 (1975) (holding that the attorney work-product privilege applied, and thus the document was exempt regardless of whether it fell within a § 552(a)(2) category). Here, the most relevant exemption is § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters [that] would not be available by law to a party other than an agency in litigation with the agency[.]"

This exemption incorporates privileges traditionally available to the government in civil discovery, such as the deliberative process, attorney-client, and attorney work-product privileges. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799-801 (1984).

## II.      FACTUAL AND PROCEDURAL HISTORY

CREW alleges that it is "a non-profit, non-partisan corporation" that engages in "research, litigation, advocacy, and public education to disseminate information to the public about government officials and their actions."  Compl. ¶¶ 5-6.   In the present lawsuit, CREW seeks access to records within OLC, which is a component of the United States Department of Justice charged with providing confidential legal advice within the Executive Branch.   Specifically, OLC's responsibilities include "[p]reparing the formal opinions of the Attorney General; rendering informal opinions and legal advice to the various agencies of the Government; and assisting the Attorney General in the performance of his functions as legal adviser to the President and as a member of, and legal adviser to, the Cabinet."  28 C.F.R. § 0.25(a); *see also* Compl. ¶ 17.   These functions are vested in the Attorney General by statute, 28 U.S.C. §§ 511-513, and since the 1950s OLC has assisted the Attorney General in their performance. *See generally* Compl. ¶¶ 14-16.   The Department's advice-giving functions are longstanding in nature.   Since 1789 the Attorney General has been statutorily charged with providing his "advice and opinion upon questions of law" to the President and to the heads of other agencies.   *See* Compl. ¶ 13 (quotation marks omitted).

On February 3, 2017, Anne Weismann, Chief FOIA Counsel for CREW, sent a letter to the head of OLC, Acting Assistant Attorney General Curtis E. Gannon, requesting that OLC "comply immediately with its obligations under 5 U.S.C. § 552(a)(2) by providing CREW with copies of all formal written opinions issued by OLC, all additional formal written opinions formalized in the future, and all existing indices of OLC's formal written opinions."  *See* Feb. 3,

2017 Letter from Weismann to Gannon (attached hereto as Exh. 1); *see also* Compl. ¶ 24.  CREW's February 3 letter also referenced a prior July 3, 2013 request from CREW to OLC "for these and any additional OLC binding opinions."  Exh. 1.

OLC did not respond to CREW's letter but it previously responded to CREW's July 3, 2013 request (referenced in the February 3, 2017 letter) on August 20, 2013.   That letter was from John E. Bies, a Deputy Assistant Attorney General within OLC, and it explained that "OLC provides confidential legal advice within the Executive Branch."  *See* Aug. 20, 2013 Letter from Bies to Weismann (attached hereto as Exh. 2).  "As such, OLC's advice is ordinarily covered by the attorney-client and deliberative process privileges, and is therefore exempt from mandatory disclosure under the FOIA."  *Id.* (citing 5 U.S.C. § 552(b)(5)).  Additionally, the Bies letter stated that "as confidential and pre-decisional legal advice, our opinions generally constitute neither 'final opinions . . . made in the adjudication of cases' nor 'statements of policy and interpretations which have been adopted by the agency.'" *Id.* (quoting 5 U.S.C. § 552(a)(2)(A), (B)).

OLC's letter then went on to explain that, notwithstanding the fact that OLC opinions are generally exempt from FOIA, OLC nonetheless "make[s] an individualized, case-by-case determination with respect to whether each opinion of our Office is appropriate for publication." *Id.* (citing Memorandum for Attorneys of the Office, from David J. Barron, Acting Assistant Att'y Gen., Office of Legal Counsel, *Re: Best Practices for OLC Legal Advice and Written Opinions* 5-6 (July 16, 2010) ("Best Practices Memo"), http://.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf; *see also* Compl. ¶ 27 (referring to Best Practices Memo).  As summarized by Deputy Assistant Attorney General Bies, the "individualized publication decision process includes consultation with interested Executive Branch agencies and consideration of a number of factors, which are set out in the Best Practices Memo."  Exh. 2.  When OLC receives a FOIA request and

an OLC opinion is responsive to that request, OLC similarly "consider[s] whether to waive applicable privileges and release the opinion as a matter of administrative discretion." *Id.* OLC's letter further made clear that the agency is committed to complying with its obligations under FOIA. *Id.*

CREW brought this action on March 10, 2017. *See* Compl. CREW previously filed suit attempting to challenge OLC's publication practices under the Administrative Procedure Act ("APA"), but that suit was dismissed. *See CREW v. Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017) ("*CREW I*"). In addition, a similar lawsuit based on a request made by the same individual (Ms. Weissmann, then working for a different organization) is currently pending before Judge Ketanji Brown Jackson. *See Campaign for Accountability v. Dep't of Justice*, No. 1:16-cv-01068-KBJ (D.D.C.). A motion to dismiss in that case is fully briefed but the action was until recently stayed pending the D.C. Circuit's decision in *CREW I*. Judge Jackson has scheduled a hearing on Defendant's motion to dismiss for July 18, 2017.

CREW's Complaint in this case contains two claims. The primary claim is that OLC has failed to comply with the affirmative disclosure provisions of § 552(a)(2), *see* Compl. ¶ 28, which has "led to the creation of secret law within OLC and DOJ." *Id.* ¶ 29. The gravamen of CREW's claim—as expressed in multiple parts of the Complaint—appears to be that all of OLC's formal written opinions must be disclosed. *See id.* ¶ 27 ("OLC's formal written opinions, described in the Best Practice[s] Memo, fall within the categories of records that 5 U.S.C. § 552(a)(2) requires be made publicly and prospectively available without the need to file a specific request under § 552(a)(3)."); Prayer for Relief ¶¶ (1)-(4) (demanding declaratory and injunctive relief as to all OLC current and future formal opinions). Accordingly, CREW requests "a declaratory

judgment that defendant has failed to comply with the ongoing disclosure obligations of 5 U.S.C. § 552(a)(2)," *id.* ¶ 30, as well as an injunction:

> Plaintiff also is entitled to an injunction directing DOJ and its component, OLC, to comply with the disclosure obligations mandated by 5 U.S.C. § 552(a)(2) by making available to CREW on an ongoing basis, and without any further requests, ***all formal written opinions OLC has created and will create in the future***.

*Id.* ¶ 31 (emphasis added).

CREW's second claim is that OLC has failed to index its opinions under 5 U.S.C. § 552(a)(2), which requires agencies to maintain "current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph . . . to be made available or published." *See* Compl. ¶ 33. CREW again seeks both declaratory and injunctive relief. *See id.* ¶¶ 36-37.

## STANDARD OF REVIEW

Defendant moves to dismiss the Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. CREW bears the burden of showing subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

Defendant also moves to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although

a court must accept all factual allegations as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.*

## ARGUMENT

The apparent premise of this lawsuit—that OLC must publish all its formal written opinions—is squarely foreclosed by binding D.C. Circuit precedent. *See EFF*, 739 F.3d at 8-10. CREW seeks to compel the publication of all OLC formal written opinions, which CREW repeatedly describes as "controlling." *See* Compl. ¶¶ 18, 20, 24. The document at issue in *EFF*, however, was a formal OLC opinion that the D.C. Circuit described as "controlling" and "precedential," 739 F.3d at 9, and the D.C. Circuit held that the opinion was properly withheld as confidential legal advice. *Id.* at 8-10. In light of that decision and numerous other precedents holding that OLC advice documents are privileged, CREW cannot plausibly have any right to the automatic disclosure of all formal OLC opinions. And to the extent CREW seeks to advance a different claim, any such claim is neither ripe for review nor adequately pled. Accordingly, CREW's Complaint must be dismissed.

## I.    TO THE EXTENT CREW SEEKS TO ADVANCE A CLAIM DIFFERENT THAN THAT APPARENTLY ALLEGED IN THE COMPLAINT, ANY SUCH CLAIM IS NEITHER RIPE NOR ADEQUATELY PLED

As noted above, CREW's Complaint repeatedly contends that, in CREW's view, *all* of OLC's formal written opinions must be published under FOIA. Because, as explained below, that theory is clearly foreclosed by binding D.C. Circuit authority, CREW may seek to advance a more narrow claim—such as, for example, a claim that OLC has unlawfully failed to publish *some* of its formal opinions, or a claim that OLC is violating § 552(a)(2) in some other, unspecified way. Any such claim, however, would be neither ripe nor adequately pled.

1.    "The ripeness doctrine is drawn both from Article III limitations on judicial power

and from prudential reasons for refusing to exercise jurisdiction[.]"  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  Typically ripeness is evaluated based on two factors: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Id.*

Based on these principles, the only claim that could conceivably be ripe here is a claim that all of OLC's formal written opinions must be published.  The Complaint simply does not set forth a factual basis for any other claim.  CREW's lawsuit does not identify or seek to obtain access to any specific OLC advice document.  To the extent CREW is seeking access to a more limited set of documents, the Complaint provides no indication—even generally—of what documents are at issue.  It does not identify a specific OLC policy that it asserts is contrary to § 552(a)(2).  It does not point to a concrete prior practice of failing to publish documents later found to be subject to § 552(a)(2).[1]  Nor does CREW present any other factual basis for its Complaint, other than its general legal allegation that all OLC formal written opinions must be disclosed.  Thus, any other claim simply lacks sufficient factual foundation for judicial resolution.

Notwithstanding the Complaint's suggestion, *see* Compl. ¶ 12, the D.C. Circuit's recent decision in *CREW I* is not to the contrary.  In *CREW I*, the D.C. Circuit held that CREW could not enforce § 552(a)(2)'s requirements under the APA because FOIA itself offered an adequate remedy.  846 F.3d at 1245.  Assessing the relief available under FOIA, the D.C. Circuit concluded

---

[1] CREW does contend that it has "repeatedly and unsuccessfully" sought OLC opinions through FOIA requests for individual documents, as well as brought broader requests for written opinions and indices. Compl. ¶ 7. The Complaint, however, does not provide any specific factual detail concerning these requests; nor does it make any allegations supporting its apparent view that OLC wrongfully failed to produce opinions subject to § 552(a)(2).  And indeed, as discussed further below, courts have repeatedly held that OLC opinions are privileged and thus properly withheld under FOIA.

that district courts have "authority to grant . . . a prospective injunction with an affirmative duty to disclose" and that "a plaintiff ... may do so without first making a request for specific records under section 552(a)(3) [of the FOIA]."  *Id.* at 1240, 42 (citing *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972)).  But the court made clear that "only a rare instance of agency delinquency in meeting its duties under the reading-room provision will warrant a prospective injunction with an affirmative duty to disclose subject records to a plaintiff."  *Id.* at 1245.

The D.C. Circuit's decision does not affect the core requirement that CREW must present its claims in a sufficiently concrete factual context to allow for judicial resolution. Indeed, that was effectively the holding of *Irons* itself.  *See* 465 F.2d at 614.  Here, aside from CREW's general legal argument that ***all*** OLC formal written opinions must be published, CREW does not identify ***any*** factual basis for its claims.

And to the extent CREW seeks to advance a claim other than the one that appears to be articulated in its Complaint, CREW also cannot identify any hardship that would justify review of any such question.  If CREW truly does have reason to believe that OLC is failing to comply with § 552(a)(2) in some other way, there is no reason CREW cannot file a new lawsuit that articulates CREW's theory and presents a more concrete factual dispute.  In particular, if CREW believes that OLC has unlawfully failed to disclose ***some*** formal written opinions, CREW could identify particular formal written opinions that it believes fall within § 552(a)(2)(A) or (B), but which OLC has failed to disclose.  It could certainly at least describe the ***types*** of formal OLC opinions that it believes fall within § 552(a)(2)'s coverage, and why it believes—contrary to the precedent discussed below—that such opinions are subject to § 552(a)(2) and not privileged.  Even if doing so might entail additional time and effort, that does not justify dilution of the ripeness requirement, *See Truckers United for Safety v. Mead*, 251 F.3d 183, 192 (D.C. Cir. 2001) (noting that "the

burden of pursuing future litigation is not enough, by itself, to demonstrate hardship justifying premature judicial decision-making").

2.      In addition to the ripeness bar, any other claim would not be adequately pled.  To state a valid claim, a complaint must allege *facts* that plausibly give rise to an entitlement to relief, rather than make conclusory assertions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  But although CREW does allege that all OLC formal written opinions must be disclosed, CREW does not plead any facts that might support a different theory.  As discussed above, CREW does not challenge any specific withholding or other wrongful action by OLC.  It does not identify a specific OLC policy that CREW believes is contrary to § 552(a)(2).  Nor does CREW point to a concrete prior practice of failing to publish documents later found to be subject to § 552(a)(2).

In short, aside from CREW's (legally foreclosed) claim that all OLC formal written opinions must be disclosed, the Complaint consists of nothing more than conclusory allegations that OLC is failing to comply with its FOIA obligations. *See, e.g.*, Compl. ¶ 24 ("OLC's ongoing refusal to comply with its non-discretionary obligations under 5 U.S.C. § 552(a) has deprived the public and CREW of valuable information and resulted in the creation of a body of authoritative controlling secret law.").  Language in a complaint that simply parrots a legal requirement does not amount to a factual allegation entitled to the presumption of truth on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Twombly*, 550 U.S. at 555)).

## II.      THE COMPLAINT FAILS AS A MATTER OF LAW BECAUSE FOIA DOES NOT REQUIRE OLC TO PUBLISH ITS FORMAL WRITTEN OPINIONS

The theory actually articulated in CREW's Complaint is that OLC must publish *all* of its

"formal written opinions, described in the Best Practice[s] Memo," which CREW repeatedly describes as controlling.  Compl. ¶ 27, Prayer for Relief.  This claim could possibly be ripe for review.[2]  But it is plainly meritless.  It is foreclosed by the D.C. Circuit's decision in *EFF*, which confirmed that OLC's written opinions generally need not be disclosed.  *See EFF*, 739 F.3d at 4-6, 9.  And as *EFF* and other decisions have made clear, OLC's formal written opinions, at least as a general matter, do not even fall within § 552(a)(2).  These conclusions are further confirmed by the Executive Branch's important interest in obtaining confidential legal advice as part of its decisionmaking processes.  CREW's contention that all such documents must be published fails as a matter of law.

### A.      OLC Need Not Disclose All Its Formal Written Opinions, as the D.C. Circuit's *EFF* Decision Confirms

The D.C. Circuit's decision in *EFF* forecloses any argument by CREW that **all** of OLC's formal written opinions must be disclosed.  *Cf.* Compl. ¶ 27.  The legal advice document at issue in *EFF* was a formal OLC opinion, which the D.C. Circuit described as possessing many of the same labels as CREW ascribes to OLC opinions that, in CREW's view, must be disclosed. *Compare EFF*, 739 F.3d at 9 (noting that the requested OLC opinion "bears . . . indicia of a binding legal decision" such as being "controlling" and "precedential"), *with* Compl. ¶ 2 (complaining that "OLC has refused to produce to the plaintiff its formal written opinions setting forth controlling legal interpretations"), Prayer for Relief ¶ 2 (requesting that Court "[o]rder Defendant to make

---

[2] OLC's practices have varied over the years and the term "formal opinions" has been used to refer to different categories of documents by different people.  But to the extent the Complaint is defining formal opinions to mean those described in the Best Practices Memo—and drafted pursuant to the process set forth in that Memo—the Government believes the legal question CREW poses here (whether **all** such opinions must be disclosed) can be answered in the negative.  The Government's suggestion that such a claim may possibly be ripe is contingent on this understanding and, to the extent CREW suggests otherwise in responding to this motion to dismiss, the Government may revisit this issue.

available to CREW for public inspection and copying on an ongoing basis all existing and future

OLC formal written opinions"). Yet the D.C. Circuit unequivocally held that the OLC opinion at

issue was properly withheld as confidential, privileged legal advice. *See* 739 F.3d at 8-9. Thus,

controlling D.C. Circuit precedent forecloses CREW's argument that FOIA requires OLC "to

make the full complement of its formal written opinions available to . . . CREW [and] the public."

Compl. ¶ 28.[3]

### B.  OLC's Formal Written Opinions Do Not Fall Within § 552(a)(2)

The premise of CREW's Complaint is that OLC produces formal written opinions falling

within § 552(a)(2), but that OLC has not disclosed those documents. Specifically, CREW alleges

that OLC has not made publicly available "all final opinions made in the adjudication of cases and

statements of policy and interpretations that have been adopted by the agency and not published

in the Federal Register." Compl. ¶ 26; *see* 5 U.S.C. § 552(a)(2)(A), (B).

At least as a general matter, however, OLC formal written opinions do not fall within either

category. *EFF* confirms as much. In that case, a requester sought a formal, final OLC opinion

that was prepared for the FBI—an opinion that would clearly fall within § 552(a)(2) under

CREW's view—and the plaintiff (and CREW as amicus) argued that the opinion must be disclosed

because it represented the agency's effective law and policy. *See, e.g.*, Brief for Amici Curiae

CREW et al., *EFF v. Dep't of Justice*, Case No. 12-5363, Doc. No. 1426930 (D.C. Cir. filed Mar.

22, 2013) at 19 ("[T]he OLC Opinion represents the definitive word from the executive branch on

the legality of a very controversial practice."). The D.C. Circuit squarely rejected this argument,

concluding that "OLC is not authorized to make decisions about the FBI's investigative policy, so

---

[3] And for much the same reason, OLC's publication practices cannot be criticized for relying on individualized, case-by-case publication assessments: if not ***all*** opinions must be disclosed, then it is clearly permissible for OLC to conduct such individualized assessments.

the OLC Opinion cannot be an authoritative statement of the agency's policy." *EFF*, 739 F.3d at 9. The court went on to reject the "working law" argument, notwithstanding the "precedential" nature of the OLC opinion:

> EFF argues that the OLC Opinion must be "working law" because it is controlling (insofar as agencies customarily follow OLC advice that they request), precedential, and can be withdrawn. That the OLC Opinion bears these indicia of a binding legal decision does not overcome the fact that OLC does not speak with authority on the FBI's policy; therefore, the OLC Opinion could not be the "working law" of the FBI unless the FBI "adopted" what OLC offered. In [*Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980)], we rejected the appellant's claim that memoranda must be released because they constituted the "final opinions" of the Department of State. We explained that while the privilege does not protect final decisions or authoritative statements on agency policy, the "final opinions" of the Department of State's Legal Adviser, "who has no authority to make final decisions concerning United States policy in the Middle East," are not final decisions of the Department of State. The same is true of the OLC Opinion in this case.

*Id.* at 9-10 (internal citations omitted).

This binding decision is dispositive of CREW's claim here. Pursuant to *EFF*, OLC opinions are not final ***agency*** decisions, and therefore need not be disclosed under § 552(a)(2). The D.C. Circuit has squarely concluded that OLC opinions (at least as a general matter) are legal advice documents, not final agency decisions. *See EFF*, 739 F.3d at 8-9.

But even going beyond *EFF*, there are ample reasons why OLC's formal written opinions do not fall within § 552(a)(2). First, OLC does not issue any opinions in adversarial disputes involving private parties. *See* Exh. 2 (noting that "OLC provides confidential legal advice within the Executive Branch"). Section 552(a)(2), however, is limited only to agency adjudication of private citizens' rights and obligations. This limitation is supported by the text of § 552(a)(2) itself, which makes clear that the covered documents refer to typical adjudicatory contexts involving private individuals, not internal agency documents. *See* 5 U.S.C. § 552(a)(2)(A) (referring to "final opinions**, *including concurring and dissenting opinions, as well as orders*,**

made in the adjudication of cases" (emphasis added); *id.* § 552(a)(2) (failure to publish a covered document precludes using the document "as precedent . . . ***against a party other than an agency***," *i.e.*, against an individual (emphasis added)).

The D.C. Circuit's decisions have consistently confirmed this limitation as well. *See EFF*, 739 F.3d at 9-10 (rejecting the "working law" line of cases in the context of an OLC opinion); *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983) ("A strong theme of our opinions has been that an agency will not be permitted to develop a body of 'secret law,' used by it ***in the discharge of its regulatory duties and in its dealings with the public***[.]" (emphasis added)); *see also Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 603 (D.C. Cir. 2001) (report not subject to affirmative disclosure because it "sets forth the conclusions of a voluntarily undertaken internal agency investigation, not a conclusion about agency action (or inaction) ***in an adversarial dispute with another party***" (emphasis added)). Another appellate court to take up the question also agreed with the D.C. Circuit, citing *EFF* and rejecting "the general argument that the legal reasoning in OLC opinions is 'working law.'" *New York Times v. Dep't of Justice*, 806 F.3d at 687.

Furthermore, OLC opinions generally cannot be considered "final opinions," because they do not finally dispose of any agency action—OLC simply provides legal advice relating to an agency's prospective policy choices, and that advice may or may not ultimately be relevant to an agency's final decision. This description contrasts starkly with "final opinions" under § 552(a)(2), which the Supreme Court has stated will "not only invariably explain agency action already taken or an agency decision already made, but also constitute 'final dispositions' of matters by an agency." *Sears*, 421 U.S. at 153-54. As explained in other decisions, OLC itself does not possess policymaking authority; instead, OLC merely provides legal advice to other Executive Branch actors, who then make policy decisions within the legal framework articulated by OLC. *See EFF*,

739 F.3d at 10 ("Even if the OLC Opinion describes the legal parameters of what the FBI is *permitted* to do, it does not state or determine the FBI's policy."); *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 203 (2d Cir. 2012). OLC's advisory role in the policymaking process confirms that OLC opinions are not "final opinions" subject to affirmative disclosure. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 74-78 (D.D.C. 2008) (rejecting "final opinion" argument with respect to OLC documents).

Because OLC itself does not have authority to act on or implement matters of policy, OLC therefore does not adopt statements of policy within the meaning of FOIA. Rather, it is the client agencies ultimately responsible for making policy decisions that may, after receiving OLC's deliberative and pre-decisional legal advice, choose to adopt a statement of interpretation or policy that is subject to the publication requirement. *See* 5 U.S.C. § 552(a)(2)(B) ("statements of policy and interpretations *which have been adopted by the agency*") (emphasis added). If the policymaking agency were to expressly adopt both the conclusion and the reasoning of an OLC advice document as the agency's own statement of interpretation or policy, then it might be covered by § 552(a)(2).[4] Even in such a circumstance, however, that publication requirement would run to the policymaking agency, not OLC, which has no policymaking authority. This understanding is confirmed by the D.C. Circuit's opinion in *Vietnam Veterans of America v. Department of Navy*, 876 F.2d 164, 164-65 (D.C. Cir. 1989), which held that when an entity has authority only to dispense legal advice on certain topics, but not to actually act on behalf of the agency on those topics, the legal opinions do not constitute statements of policy. Whatever

---

[4] An agency must expressly adopt both the conclusion and the reasoning of a pre-decisional and deliberative document to transform that document into agency policy. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184-85 (1975). Consequently, to establish that an OLC document has become the policy of a policymaking agency, there must be evidence that the agency adopted not only the conclusion, but also the reasoning, of that OLC advice.

publication obligations may rest with individual client agencies in certain circumstances, therefore, clearly OLC itself is not required to affirmatively publish its confidential legal advice.

Finally, the fact that OLC opinions are not § 552(a)(2) documents is confirmed by the weight of authority holding that specific OLC opinions are exempt from disclosure under FOIA as privileged. *See* pp. 19-20, *infra* (citing cases). This ample case law not only provides an independent basis for non-disclosure of OLC opinions, *see id.*, but also shows that OLC opinions are not covered by § 552(a)(2) to begin with.

### C.   OLC's Opinions Are Generally Exempt from Disclosure Pursuant to the Deliberative Process and Attorney-Client Privileges

CREW's demand for compelled publication of all formal OLC opinions would also render inapplicable the judicially recognized privileges generally applicable to OLC legal advice documents pursuant to Exemption 5, particularly the deliberative process and attorney-client privileges.[5] The availability of Exemption 5, however, means that OLC's formal written opinions (at least as a general matter) would be exempt from disclosure even if CREW were correct that such documents fell within § 552(a)(2) in the first instance. *See Sears*, 421 U.S. at 154 n.21.

Again, the most prominent example is the D.C. Circuit's *EFF* decision, which not only rejected the applicability of the "working law" line of cases, but also expressly held that the OLC opinion was protected by the deliberative process privilege in its entirety. Specifically, the court held that the OLC opinion was "advice offered by OLC for consideration by officials of the FBI,"

---

[5] Many OLC formal opinions could be withheld on the basis of additional exemptions as well, such as the presence of classified information, § 552(b)(1); information specifically exempted from disclosure by statute, § 552(b)(3); information subject to privacy protections, § 552(b)(6); or law enforcement sensitive information, § 552(b)(7). And OLC opinions may be subject to other privilege protections, including the presidential communications privilege and the attorney work-product doctrine. At a minimum, however, OLC opinions may generally be withheld pursuant to the deliberative process and attorney-client privileges. Thus, these two privileges are sufficient to dispose of CREW's claim that *all* formal written opinions must be published.

and fell within the line of decisions "holding that the deliberative process privilege **does** cover legal memoranda that concern the **advisability** of a particular policy, but do not authoritatively state or determine the agency's policy." *EFF*, 739 F.3d at 8; *see also* pp. 19-20, *infra* (citing additional cases holding that OLC opinions are exempt from disclosure). With this precedent in mind, it is clear that a substantial portion (if not all) of the OLC opinions that CREW asks the Court to mandate be made public here, *see* Compl. ¶ 27, may be properly withheld as privileged. Accordingly, CREW's claim that FOIA requires publication of all such opinions is meritless.

Turning to the two privileges generally applicable to OLC opinions, the deliberative process privilege applies when material is both "predecisional" and "deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The purpose of the privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. Because "the frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public," the privilege "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150.

OLC formal written opinions generally meet these requirements. As discussed above, OLC itself does not make policy decisions; instead, it provides legal advice for other agencies, and those agencies in turn make policy decisions within the legal framework articulated by OLC. Accordingly, OLC's advice is ordinarily just one input into its client agencies' ongoing deliberations about how to conduct or implement their policy goals. *See EFF*, 739 F.3d at 10 ("Even if the OLC Opinion describes the legal parameters of what the FBI is **permitted** to do, it does not state or determine the FBI's policy."); *Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 77 n.19 ("[A] legal conclusion that is part of a larger decision-making process may well be subject to the

deliberative process privilege."). In general, then, OLC opinions are critical aspects of the "process by which governmental decisions and policies are formulated," *Sears*, 421 U.S. at 150, and the public disclosure of these opinions would undoubtedly chill the "candid, independent, and principled advice" that OLC aims to provide, Best Practices Memo at 1.

Again, there is ample case law confirming that OLC opinions are generally protected by the deliberative process privilege. *See, e.g.*, *New York Times v. Dep't of Justice*, 806 F.3d at 687; *ACLU v. Nat'l Security Agency*, 2017 WL 1155910, at *10-11 (S.D.N.Y. Mar. 27, 2017); *New York Times v. Dep't of Justice*, Civ. No. 12-3215 (JSR), 2013 WL 174222 at *4-9 (S.D.N.Y. Jan. 7, 2013); *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 166-68 (D.D.C. 2008); *CREW v. Office of Admin.*, 249 F.R.D. 1, 4-8 (D.D.C. 2008); *New York Times Co. v. Dep't of Def.*, 499 F. Supp. 2d 501, 516 (S.D.N.Y. 2007); *Morrison v. Dep't of Justice*, Civ. A. No. 87-3394, 1988 WL 47662 at *1-2 (D.D.C. Apr. 29, 1988); *Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C. 1987). These cases confirm that OLC's legal advice, at least as a general matter, is deliberative in nature.

There can similarly be little debate that OLC's legal advice falls within the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). This privilege applies to government officials seeking advice from government attorneys, just as it does to private parties. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

OLC opinions generally fall within the privilege. "OLC's central function is to provide . . . controlling legal advice to Executive Branch officials[.]" Best Practices Memo at 1. That

advice aims to "focus intensively on the central issues raised by a [client agency's] request[.]" *Id.* at 2. And although OLC "operates from the presumption that it should make its significant opinions fully and promptly available to the public," frequently there will be "countervailing considerations" that lead OLC to conclude that public disclosure is inappropriate. *Id.* at 5. Indeed, several courts have previously recognized that OLC may withhold its opinions on the basis of the attorney-client privilege. *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 196 (D.D.C. 2013) ("[T]he Court concludes that the attorney-client privilege does apply to the sixteen OLC opinions because they embody legal advice that was provided in confidence at the request of and to Executive Branch officials."), *denying reconsideration*, 206 F. Supp. 3d 241 (D.D.C. 2016); *ACLU v. Dep't of Justice*, 2011 WL 10657342 at *9 (D.D.C. Feb. 14, 2011); *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d at 165; *Elec. Privacy Info. Ctr.*, 511 F. Supp. 2d at 68-69.

In light of the significant case law holding that OLC's formal written opinions are privileged and thus exempt from disclosure, CREW cannot plausibly maintain that OLC is compelled to publish all of those opinions. CREW's Complaint must therefore be dismissed for failure to state a claim upon which relief can be granted.

### D.    OLC Does Not Create Secret Law

CREW's Complaint asserts that OLC creates "secret law." *See* Compl. ¶ 24. That is incorrect. In the FOIA context, the phrase "secret law" is a term of art, sometimes also referred to as "working law." The "secret law" doctrine is a narrow one, under which agencies are prohibited from withholding decisional or post-decisional documents that govern the substantive rights or liabilities of private citizens:

> [W]e recognize that there is a narrow definition of "working law" that limits the term to those policies or rules, and the interpretations thereof, that either create or

> determine the extent of the substantive rights and liabilities of a person. This appears to be the definition understood by all the sources relied upon by the Supreme Court in *Sears* for the proposition that "working law" is not protected by exemption 5. All of the sources apparently operate under the assumption that the reason "working law" should be disclosed is that a private party may have cause to rely on it.

*Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (internal citations omitted). Here, of course, OLC opinions do not regulate the public. OLC simply provides legal advice to agencies and Executive Branch officials, which then may (or may not) make policy decisions that may (or may not) regulate the public. Regardless of whether those agencies' rationales must be disclosed as working law in some circumstances, OLC's legal advice itself is not the working law of any agency (though an agency could subsequently remove the protection of the deliberative process privilege by adopting both the conclusions and the reasoning of OLC's legal advice as the agency's own official policy, *see* note 4, *supra*).

Again, the D.C. Circuit expressly rejected the plaintiff's contrary argument in *EFF*. *See* 739 F.3d at 9 ("OLC does not speak with authority on the FBI's policy; therefore, the OLC Opinion could not be the 'working law' of the FBI unless the FBI 'adopted' what OLC offered.").[6] As confirmed by *EFF* and numerous other cases, the proper way to view OLC's advice is not as the "working law" of OLC or any particular agency, but rather as confidential legal advice that is just one of the pre-decisional inputs an agency may receive when fashioning its policies. *See EFF*, 739 F.3d at 8 ("The authorities that control the disposition of this case are the decisions holding that the deliberative process privilege ***does*** cover legal memoranda that concern the ***advisability*** of

---

[6] *See also New York Times v. Dep't of Justice*, 806 F.3d at 687 ("[T]hese OLC documents are not 'working law.' At most, they provide, in their specific contexts, legal advice as to what a department or agency is ***permitted*** to do, but OLC did not have the authority to establish the 'working law' of the agency, and its advice is not the law of an agency unless the agency adopts it." (internal citations omitted)); *CREW v. Office of Admin.*, 249 F.R.D. at 6-8 (rejecting the "secret law" argument).

a particular policy, but do not authoritatively state or determine the agency's policy."); *see also Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 75 ("The D.C. Circuit has long recognized that legal advice is an integral part of the decision-making process and is protected by the deliberative process privilege."); *Murphy v. Dep't of Army*, 613 F.2d 1151, 1154 (D.C. Cir. 1979) (holding that the provision of legal advice to a person with "decision-making power" is "a classic case of the deliberative process at work").

Likewise here, the legal advice provided by OLC aids the recipient agencies in their decisionmaking processes, and thus the advice is protected as privileged. And again, the claim apparently pled in the Complaint—that all formal written opinions must be published and thus that *no* such opinions are privileged—fails as a matter of law.

### E.     OLC's Role Within the Executive Branch Underscores the Importance of Maintaining Applicable Privileges

CREW attempts to portray OLC's advice-giving function as unique, by focusing on the "controlling" nature of OLC's advice. *See* Compl. ¶¶ 18, 20, 24. But these features of OLC's advice do not undermine its privileged nature. For one thing, the *EFF* decision expressly rejected the argument that the "controlling" nature of OLC's legal advice made it any less privileged. *See* 739 F.3d at 9. Indeed, many agencies receive similarly controlling or precedential legal advice from their in-house general counsels or chief counsels.[7] Thus, the controlling nature of OLC's

---

[7] In many cases, individual agencies' general counsels or chief counsels will provide controlling legal advice, in the sense that their legal opinions are customarily followed within the agency. In some cases, moreover, the general counsels' or chief counsels' legal advice may be formally controlling. *See, e.g.*, 49 C.F.R. § 1.26 (Department of Transportation regulation stating that "[t]he General Counsel is the chief legal officer of the Department, legal advisor to the Secretary, and final authority within the Department on questions of law"). Regardless of whether it is formally controlling or followed as a matter of custom, however, it is clear that, contrary to CREW's theory in this case, legal advice by such agency lawyers to policymaking officials is generally privileged.

legal advice can hardly be described as unique within Executive Branch attorney-client relationships (nor is it relevant to whether or not the advice is covered by § 552(a)(2)).

If anything, CREW's description of OLC's advice only highlights why such advice must remain privileged.  A proper construction of the relevant privileges—and in particular the deliberative process privilege, which is a uniquely governmental privilege—must account for the Executive Branch's designation of a single office as responsible for conclusively resolving difficult (and sometimes disputed) legal questions.  As prior Attorneys General and former OLC officials have recognized, the Department of Justice's advice-giving function—with that advice generally being treated as authoritative throughout the Executive Branch—is necessary for the government's orderly administration:

> Although the [Judiciary Act of 1789], requiring this [advice-giving] duty of the Attorney General, does not expressly declare what effect shall be given to his opinion, yet the general practice of the Government has been to follow it;—partly for the reason already suggested, that an officer going against it would be subject to the imputation of disregarding the law as officially pronounced, and partly from the great advantage, and almost necessity, of acting according to uniform rules of law in the management of the public business: a result only attainable under the guidance of a single department of assumed special qualifications and official authority.

*Office and Duties of Attorney General*, 6 Op. Att'y Gen. 326, 334 (1854); *see also Opinions of Attorneys General and Decisions of Auditors*, 5 Op. Att'y Gen. 97, 1849 WL 2033 at **1 (1849); Randolph D. Moss, *Executive Branch Legal Interpretation*, 52 Admin. L. Rev. 1303, 1309-11 (2000).  The consolidation of the Executive's advice-giving function within a single office in the Department of Justice serves important rule-of-law values, including by allowing the office to create certain norms governing the provision of legal advice.  *See, e.g.*, Best Practices Memo at 1 ("OLC must always give candid, independent, and principled advice—even when that advice is inconsistent with the aims of policymakers.  This memorandum reaffirms the longstanding principles that have guided and will continue to guide OLC attorneys in all of their work[.]").

Accordingly, the fact that OLC provides authoritative legal advice for the Executive Branch—or that OLC may approach its advice-giving function in a somewhat different way than private lawyers would—does not prevent OLC from invoking the relevant privileges. Congress has intended, since 1789, that the Attorney General (and, by extension, OLC) provide objective, authoritative legal advice to the rest of the Executive Branch. *See Executive Branch Legal Interpretation*, 52 Admin. L. Rev. at 1306-16. Construing FOIA as CREW proposes—to require the automatic disclosure of all OLC's formal written opinions—would undoubtedly undermine this long-settled and important role for OLC and the Department of Justice in our nation's government and, by undermining the confidentiality of Executive Branch legal advice, threaten the rule of law.

### F.    CREW's Argument Raises Significant Constitutional Concerns

CREW's argument that all OLC formal written opinions must be publicly disclosed would have far-reaching implications. Not only would this argument damage OLC's effectiveness as an institution, it would also call into question the ability of the Executive Branch and senior Executive Branch officials to obtain *any* confidential legal advice. CREW's argument thus raises significant constitutional concerns, and should be rejected on this basis alone.

CREW's Complaint and its accompanying prayer for relief—seeking a judicial order compelling the release of "all existing and future OLC formal written opinions," Compl. Prayer for Relief ¶ 2—is not only incorrect as a matter of law and unwise as a policy matter, but would also significantly interfere with the President's constitutional duties under Article II. Specifically, the Constitution requires that the President take an Oath promising to "faithfully execute the Office of President of the United States," and to "preserve, protect and defend the Constitution of the United States." U.S. Const. art. II, § 1, cl. 8. The Constitution further requires the President to

"take Care that the Laws be faithfully executed[.]"  *Id.* art. II, § 3.  In connection with those duties, the President is authorized to "require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices." *Id.* art. II, § 2, cl. 1.

Courts and government officials have consistently recognized that, for a President to effectively execute his duties under Article II, he must be able to obtain confidential and candid legal advice.  *See, e.g.*, *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993) ("The ability to discuss matters confidentially is surely an important condition to the exercise of executive power. Without it, the President's performance of any of his duties— textually explicit or implicit in Article II's grant of executive power—would be made more difficult."); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 50-51 (D.D.C. 2002) ("[T]he Supreme Court has repeatedly recognized that the importance to the Presidency of receiving candid, honest, and when necessary, unpopular, advice from high Government officials and those who advise and assist them in the performance of their manifold duties is paramount."); Letter from Att'y Gen. Mukasey to Sen. Maj. Leader Reid, Re: The OLC Reporting Act of 2008 (Nov. 14, 2008) at 3 (discussing how "[a]dministrations of both political parties have long recognized the importance of protecting the Executive branch's confidential legal advice" and citing examples), *available at* http://www.justice.gov/archive/ola/views-letters/110-2/11-14-08-ag-ltr-re-s3501-olc-reporting-act.pdf.

Plainly, CREW's requested relief here—the mandatory disclosure of all formal OLC written opinions—would, if granted, significantly interfere with the President's ability to receive confidential legal advice.  Not only would it prevent the President himself from confidentially receiving such advice—thus interfering with his authority under the Opinions Clause, in addition

to the execution of his Article II duties—but the requested relief would also interfere with the President's discharge of his constitutional obligation to take care that agencies faithfully execute the laws, including by ensuring that those agencies may receive confidential legal advice directly, to inform both their decisionmaking processes and their ability to faithfully execute the law.

Construing FOIA to permit CREW to obtain this relief would clearly raise significant constitutional concerns and, in similar circumstances, the Supreme Court has construed statutes in a manner that avoided such constitutional problems. *See Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 465 (1989) (construing Federal Advisory Committee Act ("FACA") so as to avoid encroaching on President's Article II authority); *see also id.* at 488-89 (Kennedy, J., concurring) (concluding that FACA was unconstitutional as applied, because "[t]he mere fact that FACA would regulate so as to interfere with the manner in which the President obtains information necessary to discharge his duty assigned under the Constitution to nominate federal judges is enough to invalidate the Act").

Even outside the context of OLC advice, moreover, accepting CREW's argument would call into question Executive Branch policymakers' ability to obtain ***any*** confidential legal advice, regardless of whether the advice came from OLC. The damage to the Executive Branch that would be caused by such a holding—essentially eliminating the government's ability to protect formal written opinions under the deliberative process and/or attorney-client privileges—can scarcely be overstated. *See* Letter from Mukasey to Reid at 4 ("[L]egal matters are likely to be among those on which high government officials most need, and should be encouraged to seek, objective, expert advice. . . . Any other approach would jeopardize not just particular policies and programs but the principle that the government must obey the law.").

26

In sum, OLC's advice-giving function is critical to the President's effective execution of his constitutional duties and responsibilities pursuant to Article II.  CREW's arguments here are plainly in substantial tension with the Executive's ability to obtain confidential legal advice.  These significant constitutional concerns, by themselves, caution against CREW's radical reading of the FOIA statute.  For this reason as well—and because, in any event, CREW's claim that all OLC formal written opinions must be published fails as a matter of law—the Complaint should be dismissed.

### III.   THE INDEXING CLAIM MUST BE DISMISSED.

The above discussion demonstrates why Count One in CREW's Complaint must be dismissed.  Count Two alleges that OLC has failed to comply with the indexing requirement of § 552(a)(2), which requires that each agency make available indices of "any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published."  5 U.S.C. § 552(a)(2); *see* Compl. ¶ 37.  This claim, too, must be dismissed.  CREW's indexing claim is entirely derivative of its first claim about the scope of § 552(a)(2); the indexing duty applies only to materials "required by this paragraph to be made available or published."  5 U.S.C. § 552(a)(2).  For all the reasons discussed above, CREW's claim that all OLC formal written opinions must be published fails as a matter of law, and CREW has not otherwise presented a ripe or adequately pled claim that OLC has unlawfully withheld any documents under § 552(a)(2).  *A fortiori*, then, CREW also has not plausibly established any violation of the indexing requirement.  Both of the claims in CREW's Complaint should therefore be dismissed.

### CONCLUSION

For the foregoing reasons, CREW's Complaint should be dismissed.

Dated: May 3, 2017                     Respectfully submitted,


                                       CHAD A. READLER
                                       Acting Assistant Attorney General

                                       ELIZABETH J. SHAPIRO
                                       Deputy Branch Director

                                       /s/ Andrew M. Bernie
                                       Andrew M. Bernie (DC BAR# 995376)
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Ave., NW
                                       Washington, DC 20530
                                       Telephone: (202) 616-8488
                                       Facsimile: (202) 616-8470
                                       Email: andrew.m.bernie@usdoj.gov
                                       *Counsel for Defendant*